UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

FILED
02 JUL 30 PM 1:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| PAUL WYATT, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ANTHONY J. PRINCIPI, in his )<br>official capacity as SECRETARY of )<br>the DEPARTMENT OF )<br>VETERAN'S AFFAIRS, )<br>)<br>Defendant. )<br>) | Civil Action Number<br>01-C-410-W |

ENTERED
JUL 30 2002

## MEMORANDUM OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this case, Plaintiff Paul H. Wyatt claims that his employer, Defendant Principi, terminated his employment because of his age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). Defendant has moved for summary judgment. (Doc. 9). Based on the undisputed facts, the Court concludes that Defendant is entitled to judgment as a matter of law.

I. The Undisputed Facts[1]

---

[1] "The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the record. These are the 'facts' for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994)." *Underwood v. Life Ins. Co. of Georgia*, 14 F. Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

Plaintiff was born in 1939. He is a high school graduate with some college education. Plaintiff began working for the Defendant at the Tuscaloosa, Alabama facility in 1986. In March of 2000, Plaintiff applied for a promotional opportunity, to become the Laundry Plant Manager. Three candidates were interviewed for the position. Plaintiff, the oldest of the three interviewees, was passed over for the promotion. The position was instead awarded to a forty-six year old. Plaintiff then timely filed the instant suit in federal court, alleging age discrimination on the part of Principi and the Department of Veteran's Affairs.

At the time of the complained-about employment decision, Plaintiff was a Program Support Assistant – a GS-5 position. The Laundry Plant Manager position sought by Plaintiff is a GS-11 position.

Plaintiff first moved into the laundry division of the site in September of 1994, and remained there until October, 1995. Plaintiff's position during that time period was Laundry Plant *Supervisor*, and it appears that the position was rated a GS-5.[2] In October 1995, due to some sort of "consolidation" the Laundry Plant *Manager* position was posted. Plaintiff was not considered for the position. The position had been posted at a GS-12 level, and Plaintiff was ineligible for the promotion due to the considerable gap between the levels of responsibility attending the two positions. Plaintiff complained to various members of the

---

[2]It's not entirely clear from the pleadings what level any of Plaintiff's positions were prior to his being "demoted" into the program support assistant position in August of 1998. Based on the context provided, it seems that he could not have been in a position rated higher than GS-9, and was likely in a position rated lower.

personnel department, averring that the Laundry Plant Manager position was actually a GS-9 rated position, and therefore also a position for which Plaintiff was qualified.

The position was then re-posted in December, 1995 as a GS-11/12 position. Apparently without interviewing any candidate, a laundry employee from South Carolina was brought in to fill the Laundry Plant Manager position. The employee, Ted Durst, was seven years younger than Plaintiff. Plaintiff concedes that Durst was experienced in laundry work and in the "VA system." (Wyatt Affidavit, at p. 15). However, Plaintiff contends that Durst was a very poor worker. Specifically, Plaintiff maintains that Durst had a reputation for shoddy work that preceded him at the Tuscaloosa facility. Also, Plaintiff contends that Durst's poor performance in the position lead to his vacating the position around January of 1997.

After Durst left the Plant Manager position, Plaintiff resumed the Plant Supervisor position on an interim basis for three months. In the Spring of 1997, the Plant Manager position was again posted. Plaintiff applied for the position and was given a telephone interview. Plaintiff was interviewed by Mark Scogin, the Director of the Facility Management Service Line, and by Judy Mayr, Wyatt's immediate supervisor. Plaintiff was passed over for the job in favor of Dennis Williams. Williams was approximately twelve years younger than Plaintiff. Plaintiff admits that Williams had been to laundry school and was a registered Laundry and Linen Director. Wyatt Affidavit, at 18. Williams had also been enrolled in an internal training program designed to lead to the Laundry Plant Manager

position. Williams filled the Laundry Plant Manager position in June of 1997.

In August 1998, Plaintiff was demoted into the Program Assistant Support position. The position was rated lower than the one Plaintiff had occupied, but with the same pay rate. At the time of the demotion, Plaintiff was a Laundry Foreman. It appears that the reason given for the demotion was that there was not enough work, and the position was to be eliminated. Prior to eliminating the position, Plaintiff was temporarily transferred out of the position for training purposes. Therefore, although it would have required Congressional approval to conduct a RIF *per se*, "vacant" positions may be eliminated with minimal oversight. See Scogin Depo., p. 121. Plaintiff's position was eliminated in such a manner. Four weeks after Plaintiff was demoted, the Laundry Foreman position was given to Michael Parham, a man approximately 15 years younger than Plaintiff. Parham had served as a Laundry Plant Supervisor at a VA facility several years earlier. Scogin appears to have been the decision-maker in transferring and demoting Plaintiff, and subsequently re-filling his position.

In November, 1999, Williams vacated the Laundry Plant Manager position. Therefore, the opening was re-posted. It was rated GS-11, and was given a closing date of November 29, 1999. The position was posted "locally," meaning that it was open only to applicants from within the VA system. Plaintiff applied for the job. However, the job opening was again posted "locally," with a closing date of December 6, 1999. Plaintiff was the only applicant for the position.

On December 14, 1999, Billie J. Meredith, a 58 year-old Human Resources specialist, decided to post the position a third time. Because Meredith determined that Plaintiff was not qualified for the Laundry Plant Manager position, she authorized the posting of the job on the internet so that members of the public could apply for the job. The new closing date for the position was December 28, 1999. As a locally posted position, Parham could not be considered for the job because he had not been employed continuously for a long enough period of time. However, as a publicly posted job, Parham was able to apply. After the third closing date, Plaintiff, Parham, and Reuben Marzan applied fore the job. Marzan was 58 years old at this time. Plaintiff was 61, and Parham was 46.

It was not until February of 2000 that Ms. Meredith certified Plaintiff's eligibility for promotion to the Laundry Plant Manager position. Two weeks passed and Plaintiff still had not been interviewed for the position, even though Parham and Marzan had been. Plaintiff was informed by one Carstarphen, the EEO Coordinator for the VA facility, that the other two applicants had already been interviewed. Carstarphen apparently went to speak with Ms. Meredith in Human Resources, and told her that he thought that "the white male was being discriminated against at this hospital." (See, Wyatt's Handwritten Notes of March 15, 2000).

On March 16, 2000, Scogin's secretary called Plaintiff to schedule an interview. One was arranged for March 20, 2000. Prior to his interview, Plaintiff spoke with Parham about the job opening. Parham indicated to Plaintiff that he had been told by Scogin that the decision as to the job opening had been made.

Plaintiff was interviewed in the same manner as Marzan and Parham. Scogin used an interview technique known as "Performance Based Interview," which consisted of seven categories: (1) interpersonal effectiveness; (2) customer service; (3) creative thinking; (4) organizational stewardship; (5) personal mastery; (6) technical skills and (7) leadership. Each of the three candidates for the position was ranked on each axis, with evaluations of either good, better, or best. Parham was evaluated as "best" in five categories, and "better" in the remaining two. Plaintiff was evaluated as "best" in one category, "better" in four categories, and "good" in two. Marzan was rated lowest of the three. Both Plaintiff and Parham had past VA laundry supervisory experience.

Certain notations appear on the interview worksheets for the three candidates for the position. On Reuben Marzan's sheet, parallel to the question to be asked of the candidate, "tell me about yourself," Scogin noted Marzan's height, age (58 years old), and that he has two daughters. <u>See</u>, Exh. 6, attached to Depo. of Paul Wyatt. On the next question, which reads "[w]hat are your career goals? or [w]hat are your future plans?", Scogin filled in "laundry is what I enjoy most." On Plaintiff's worksheet, the first question elicited no age-related information. However, in response to the question regarding future plans or career goals, Plaintiff responded only "Sept. 22, 2004 – retire." On Parham's worksheet, there is no age-related information, but it is noted that he had been married for 22 years, and had two children.

In his brief Plaintiff suggests that these notations were written by Scogin. A more

accurate description of the age-related notations is that Scogin transcribed the responses of the candidates.

Essentially Plaintiff relies on three pieces of evidence to demonstrate pretext in the instant case: (1) that he was transferred and his position eliminated in 1998, and the job re-posted and filled a month later; (2) that Defendant continued to post the opening for the Plant Manager position even though Plaintiff had applied and was qualified; and (3) notations concerning age on the interview worksheets of the two older candidates, but not on the youngest candidate's.

## II. Summary Judgment Standards

On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for the motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323.

However, "Rule 56 . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Jones v. Sheehan, Young & Culp, P.C.,* 82 F.3d 1334, 1338 (5th Cir. 1996); *see also Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden on the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."), *cert. denied sub. nom.*, 516 U.S. 817 (1995).

Once the moving party has satisfied its initial burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company,* 32 F.3d 520, 523 (11th Cir. 1994). In resolving whether a given factual dispute requires submission to a jury, a district court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor. *Rooney v. Watson,* 101 F.3d 1378, 1380 (11th Cir. 1996) (citing *Hale v. Tallapoosa Co.,* 50 F.3d 1579, 1581 (11th Cir. 1995)).

### III. The Applicable Substantive Law

The ADEA makes it "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff may establish a prima facie case of age discrimination by direct evidence, circumstantial evidence, or statistical proof. The Eleventh

Circuit relies on the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248 (1981) to evaluate ADEA claims based on circumstantial evidence. Chapman v. AI Transport, 229 F. 3d 1012, 1024 (11th Cir. 2000). Under this framework, the plaintiff carries the initial burden of establishing a prima facie case. Combs v. Plantation Patterns, 106 F. 3d 1519, 1527-28 (11th Cir. 1997).

If the plaintiff satisfies her prima facie case, the burden then shifts to the defendant employer to articulate a legitimate, non discriminatory reason for the challenged employment action. See id. The employer's burden, however, is merely one of production. Id. at 1528 (quoting Burdine, 450 U.S. at 254-55). Once the employer articulates one or more legitimate, nondiscriminatory reasons, the presumption of discrimination vanishes and "the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Chapman, 229 F. 3d at 1024.

IV. Analysis

In the instant case, Plaintiff admits that there is no direct evidence of age discrimination. The parties also agree that Plaintiff is able to satisfy the requisite prima facie showing. Therefore, this case will turn on the plaintiff's ability to demonstrate that the defendant's proffered reason for passing him over for the promotion is pretext.

As discussed above, Defendant maintains that Plaintiff was passed over for promotion because he performed worse on the "Performance Based Interview" categories than the candidate to whom the job was offered. Therefore, Defendant has carried its burden of articulating a non-discriminatory reason for terminating Plaintiff's employment.

Plaintiff argues that several facts demonstrate that Defendant's proffered reason for passing him over for the promotion to the Laundry Plant Manager position was in fact a pretext for age discrimination. *See* Scoggins Depo., at 34-100. Rather than attempting to demonstrate that the defendant's articulated reason is simply not worthy of belief, Plaintiff in the instant case has a more specific theory of pretext. Plaintiff argues that it was an illegal ageist animus that more likely motivated Defendant's decision to promote Parham rather than Plaintiff. Plaintiff first argues that several instances of discrimination that predate the employment decision at issue in this case are telling evidence of an ageist animus at the VA facility. Specifically, Plaintiff's demotion due to a "reduction in force" in August of 1998 appears to have been an act of discrimination committed by the same decision-maker at issue in the employment decision at issue in this litigation. Scogin eliminated Plaintiff's Laundry Foreman position, but re-established the position one month later and filled it with Parham. Parham is also the same employee to whom the Plant Manger position at issue in this case was awarded. Defendant does not dispute that the position was re-established in exactly the same form that it had been in one month earlier, save that it was re-established as a two-year position. Although Plaintiff obviously cannot recover for this potential violation, this

transfer/RIF and demotion, which was likely a sham, is probative evidence of pretext with respect to the employment action at issue. See, e.g., National R.R. Passenger Corp. v. Morgan, 2002 WL 1270268, *2 (S.Ct.); United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977); Allen v. County of Montgomery, 788 F.2d 1485, 1488 (11th Cir. 1986).

Plaintiff also argues that the fact that Defendant continued to re-post the opening for the Plant Manager position, despite the fact that Plaintiff had applied and was qualified for the position. Third, Plaintiff contends that he was not interviewed timely, and that the decision not to promote him had been made prior to his interview. The decision-maker in charge of filling the position was Billie Meredith. The reason provided by Defendant for re-posting the opening is that they wanted more candidates than one to choose from. Read in connection with the RIF and demotion suffered by Plaintiff, it appears that the re-posting of the job on the internet might be some evidence of discrimination against Plaintiff. However, it's not clear that the discrimination was due to Plaintiff's age, as opposed to, perhaps, his personality. Also, Defendant's failure to interview Plaintiff in a more timely manner is no evidence of discrimination in this case, as Marzan, a fifty-eight year old candidate, was interviewed in a timely manner. Therefore, such evidence is of marginal value in buttressing Plaintiff's age discrimination claims.

Finally, Plaintiff hangs his hat on the notations made on the interview worksheets of the three candidates for the position. Plaintiff intimates that Scogin, the interviewer, was drawing conclusions and making inferences about groups of people based on prohibited

considerations. Plaintiff's argument is that, on the two older employees' worksheets there are notations regarding the candidates' age, but that such notations are absent from Parham's worksheet. Because it is noted on Plaintiff's worksheet that he is set to retire September, 2004, Plaintiff argues that Scogin was drawing that conclusion based on Plaintiff's age, and was therefore considering such information in deciding whom to hire. However, it is undisputed that Scogin merely recorded answers supplied by the candidates; it is also clear that the questions posed to the candidates were age-neutral. Again, by comparing Plaintiff's worksheet to Marzan's (both are nearly the same age), it is apparent that Marzan took the question regarding his career goals or future plans to mean what sort of work he enjoyed doing, or in which department he sought work. Plaintiff clearly read the question differently, and chose to answer by referring only to his expected retirement date. For the sake of comparison, on Parham's worksheet, under the question of career goals or future plans, his response was simply "Laundry Plant Manager." Therefore, the notations on the interview worksheets of the candidates do nothing to advance Plaintiff's age discrimination claim.

## Conclusion

Because Plaintiff is unable to rebut head-on Defendant's proffered reason for terminating Plaintiff, and there being no genuine issues of material fact in dispute, the Court concludes that Defendant's Motion for Summary Judgment is due to be GRANTED, and such claims DISMISSED WITH PREJUDICE.

These conclusions shall be embodied in a separate Order dismissing the case.

Done this 29th day of July, 2002.

_____
Chief United States District Judge
U.W. Clemon